# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **LYNFORD GROGG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.: 1:07-CV-222** |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the

defendant, CSX Transportation, Inc. ("CSX") on May 26, 2009.  Docket at 48.  The plaintiff,

Lynford Grogg ("Grogg") filed a response in opposition to the motion on June 25, 2009 (docket

at 53) and CSX filed a reply on July 13, 2009 (docket at 54).  For the reasons discussed herein,

the motion for summary judgment is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Grogg was employed by CSX from 1968 until 2007.  He began his long career with the

railroad as a clerk, but spent most of his years as a road conductor, which meant he road trains

over the railroad rather than working in a rail yard.  The last 15 years of Grogg's career were

split between working on the CSX "Chicago super-pool or the Lima pool."  Defendant's

Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memorandum"),

docket at 49, p. 2.  "The Chicago super-pool was a priority train that traveled between Willard,

Ohio, and Chicago without any stops in between.  The job was generally 'step on step off' of the

train, with two days on then two days off."  *Id*.  "During the winter months, [Grogg] worked the

Lima pool.  The Lima pool was 93 miles by rail, 'Garrett to Lima, and then you usually hop in a

cab and come home, or take a cab down and get on a train and come back.'" *Id.* (quoting Grogg

Deposition, pp. 56-57). According to CSX, [t]he majority of [Grogg's] time was spent in a

locomotive rather than walking. . . . [Grogg] last worked on October 31, 2007." *Id.*

In this lawsuit, Grogg asserts that "during the course and scope of his employment as a

conductor for defendant, plaintiff was seriously injured while riding on defective locomotives on

rough and defective track and was forced to work on large, oversized ballast that did not meet

the size specifications of defendant." Complaint, p. 2. Grogg maintains that his "injuries and

damages are painful, permanent, progressive and disabling" and have impaired his ability to

work both presently and in the future. *Id.*, p. 3. More specifically, Grogg's alleged injuries

include degenerative disc disease in his back and osteoarthritis in his right knee. Plaintiff's

Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment

("Plaintiff's Response"), docket at 52, p. 5. He brought the present action seeking damages

under the Federal Employers Liability Act ("FELA"), 45 U.S.C § 51 *et seq*.

CSX argues that it is entitled to summary judgment on Grogg's claims because "(1) there

is no evidence of defective locomotives or defective track in this case, other than Plaintiff's

speculation; (2) Plaintiff's claims are precluded by superseding federal law; and (3) there is no

evidence of causation." Defendant's Memorandum, p. 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning

material facts are genuine where the evidence is such that a reasonable jury could return a verdict

2

for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which

are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

## DISCUSSION

### 1. Motion for Summary Judgment for Lack of Evidence.

The FELA provides, in relevant part, as follows:

> Every common carrier by railroad while engaging in commerce between any of the several states or Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. The language of the statute is broad, covering any injury sustained by a railroad employee if that injury was caused "in whole *or in part* from the negligence of" the carrier. It is not necessary for a plaintiff in a FELA action to prove that his injuries were the sole result of the carrier's negligence–only that such negligence played "any part, even the slightest, in producing the injury . . . ." *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506-07 (1957). At the same time, it is not enough for a FELA plaintiff to simply raise the specter that some sort of negligence on the part of a railroad company caused his injuries. Rather, he must still meet the burden of establishing the common law principles of negligence apply, i.e., duty, breach, causation, and damages. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990).

The relaxed standard of proof required of plaintiffs in FELA actions is well established and has been discussed in detail by the Seventh Circuit:

4

It's true that the FELA makes the railroad liable for "injury or death *resulting in whole or in part* from the negligence" of the railroad or its employees, 45 U.S.C. § 51 (emphasis added), and this has been interpreted to mean that the railroad is liable if "the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (emphasis added); see also *Walker v. Northeast Regional Commuter R.R.,* 225 F.3d 895, 897 (7th Cir. 2000). "The fact that there may have been a number of causes of the injury is ... irrelevant as long as one cause may be attributable to the railroad's negligence." *Heater v. Chesapeake & Ohio Ry.,* 497 F.2d 1243, 1246-47 (7th Cir. 1974). A concurring opinion in the *Sorrell* case suggests that Congress's only purpose in specifying "in whole or in part" was to make clear that a railroad would be liable if it was negligent even if the injured worker had been much more negligent. *Norfolk Southern Ry. v. Sorrell, supra,* 127 S.Ct. at 810-11.

*Coffey v. Northeast Illinois Regional Commuter R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007).

Likewise, the statute's very broad remedial nature is also well established. As the Seventh

Circuit has explained:

The intent of the FELA is to provide broad remedial measures for railroad employees. *Walker v. Northeast Regional Commuter R.R. Corp.,* 225 F.3d 895, 897 (7th Cir. 2000); *Williams v. National R.R. Passenger Corp.,* 161 F.3d 1059, 1061 (7th Cir. 1998); *Fulk v. Illinois Central R.R. Co.,* 22 F.3d 120, 124 (7th Cir.), *cert. denied,* 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). A railroad will thus be held liable if the employer's negligence played any part, even the slightest, in producing the injury. *Walker,* 225 F.3d at 897; *Williams,* 161 F.3d at 1061; *Fulk,* 22 F.3d at 124. A plaintiff's burden in an FELA action is therefore significantly lighter than it would be in an ordinary negligence case. *Williams,* 161 F.3d at 1061; *Fulk,* 22 F.3d at 124. Indeed, some of our cases have noted examples of FELA cases submitted to juries based upon evidence "scarcely more substantial than pigeon bone broth." *Williams,* 161 F.3d at 1061 (quoting *Harbin v. Burlington Northern R.R. Co.,* 921 F.2d 129, 132 (7th Cir.1990)). As light as this burden is, the plaintiff must still present some evidence of negligence in order to survive a motion for summary judgment. *Walker,* 225 F.3d at 897. Specifically, the plaintiff must offer evidence creating a genuine issue of fact on the common law elements of negligence, including duty, breach, foreseeability, and causation. *Williams,* 161 F.3d at 1062; *Fulk,* 22 F.3d at 124.

*Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 (7th Cir. 2005).

Against these standards, CSX argues that Grogg's claims fail because he establishes "no issues of material fact regarding alleged negligence." Defendant's Memorandum, p. 3. Specifically, CSX argues that Grogg "cannot produce specific facts to support his FELA claim regarding 'defective locomotives.'" *Id*. CSX states, quite properly, that "the mere occurrence of an injury does not constitute negligence[.]" in a FELA case. *Id*. (citing *Chicago, R.I. & P.R. Co. v. Lint*, 217 F.2d 279 (8th Cir. 1954)). According to CSX, "[i]n this case, with respect to Plaintiff's allegation that he was injured as a result of defective locomotives and defective locomotive seats, there is an absence of the specific facts and evidence necessary for Plaintiff's claim to proceed. Plaintiff cannot identify why or how the locomotives were allegedly defective. There is no evidence whatsoever, other than Plaintiff's speculation, that any locomotive on which he rode was defective." *Id*., pp. 3-4.

The evidence on this issue certainly goes well beyond "Plaintiff's speculation." Grogg responds to CSX's argument by presenting evidence from several proposed experts who offer their opinions on this issue. For example, Grogg submitted a report prepared by Tyler Kress of Best Engineering, which calls itself a biomechanical, ergonomic and safety technology company. Plaintiff's Response, Exhibit B.[1] The lengthy report "summarizes [Kress's] opinions to date

---

[1] Kress holds B.S., M.S. and Ph.D. degrees "with major concentrations in Biomedical Engineering and Industrial Engineering" . . . and is "an Adjunct Professor in the Health and Safety Programs and the Associate Director of The University of Tennessee Safety Center . . . ." Exhibit B, p. 1. CSX has not filed a motion to strike or otherwise challenge Kress's report submitted by Grogg. CSX did, however, state in its memorandum that it had not had an opportunity to depose Kress and that as of the date of the filing of the motion for summary judgment, "Kress has failed to produce a report of his opinions . . . . CSX would be prejudiced should his opinions be considered in opposition to summary judgment." Defendant's Memorandum, p. 1, n. 1. This protestation in a footnote in CSX's brief is insufficient to constitute a motion to strike Kress's report from the record on summary judgment. In any event, Grogg points out in his response brief that he "provided a copy of Dr. Tyler Kress' report to

regarding Lynford Grogg's work environment at CSX Transportation, Inc." Exhibit B, p. 1. In

that report, Kress arrives at certain conclusions. After a detailed discussion of the mechanics and

workings of locomotives, Kress concludes that "[w]hole body vibration exposure and cumulative

wear-and-tear due to poorly designed seats can be injurious, yet subtle to the operators

themselves." *Id*., p. 2. Kress then goes on to support this conclusion by explaining how constant

exposure to locomotive vibration and operators' continued use of inadequately designed seats in

those locomotives can contribute to certain physical injuries over time. *Id*., pp. 2-6. Kress also

opines that "Mr. Grogg's work at the railroad exposed him to risk factors that are definitely

associated with and consistent with development of his injuries. The biomedical effects of

postures due to poor seating design and cyclical motions experienced while operating a

---

CSXT on May 27, 2009, one day after CSXT filed this Motion. Any assertion that CSXT will be prejudiced should Dr. Tyler Kress' opinions be considered herein is specious. The opinions expressed by Dr. Kress in this case have been offered by Dr. Kress in numerous other cases involving CSXT who has deposed Dr. Kress concerning these opinions on several prior occasions. . . . Plaintiff has agreed to produce Dr. Kress for deposition at a mutually agreeable date and time." Plaintiff's Response, p. 3, n. 2. Finally, in its reply brief, CSX reiterates its opposition to Kress's report, calling it "an unsigned report letter . . . to Plaintiff's counsel. Under Rule 56(e)(2), it would be inappropriate for this Court to rely on the unsworn report of Tyler Kress." Defendant's Reply Memorandum in Support of its Motion for Summary Judgment ("Defendant's Reply"), docket at 54, p. 17, n. 5. CSX concludes with the rather curious statement that "[n]evertheless, Tyler Kress is not a medical doctor, he is not qualified to opine on causation, and none of the opinions he offers have any effect on the legal issues raised in CSXT's motion." *Id*. In other words, the court concludes, CSX is objecting to Kress's report but not to the point of bothering to move that it be stricken. Kress's opinions, whether offered through a letter, a sworn affidavit, in a deposition, or as proposed live trial testimony, may be inadmissible for various reasons as CSX seems to be arguing (or at least as the court infers CSX to be arguing). The court offers no opinion on this issue at this time and will rule on any proper motion to strike or motion in limine that CSX may choose to file in the course of this litigation. For present purposes, however, the report is part of the evidence on summary judgment and CSX has done nothing to oppose it other than to object and then claim that it is not relevant anyway. The court will consider the opinions expressed by Kress in his report, along with all the other evidence submitted as it all relates to the present motion for summary judgment.

locomotive every work day can certainly be associated with the development of musculoskeletal problems." *Id*., p. 5.

Kress also offers in his report his opinion regarding Grogg's long-term exposure to walking on large, uneven ballast. *Id*., pp. 6-8. Kress states that "the biomedical effects of walking on larger size, irregular ballast can certainly be associated with musculoskeletal problems[.] . . . as a result of <u>excessive</u> pronation of the feet over the ground surface." *Id*., pp. 6-7 (emphasis in original). Finally, Kress opines that his review of a wide range of scholarly studies and reports leads him to the conclusion that CSX was or should have been aware that mechanical design features of locomotives, locomotive seats, and uneven ballast in rail yards could result in personal injuries to employees. *Id*., pp. 5-8.

Grogg also presents a letter from Gregory M. Sassmannshausen, a physician with Fort Wayne Orthopaedics, who has examined and treated the plaintiff. Plaintiff's Response, Exhibit C. In that letter, Dr. Sassmannshausen states that Grogg told him he had been in an automobile accident "20-25 years ago." *Id*. Grogg also explained to Dr. Sassmannshausen that he "has worked as a conductor for the railroad for many years since that time." *Id*. Dr. Sassmannshausen concludes in his letter that he "cannot state the exact cause of the patient's knee arthritis. However, certainly his motor vehicle accident has contributed to this. It is also my opinion that the repetitive nature of what he does as a conductor over the years has also contributed to the progression of his osteoarthritis." *Id*.

Grogg also presents the deposition testimony of Robert Shugart, a physician who diagnosed Grogg's degenerative disc disease in 2006. Plaintiff's Response, Exhibit E. In his deposition Dr. Shugart states that in his opinion, Grogg's working conditions and environment

8

could have caused and/or exacerbated the disc disease in his back. *Id*., pp. 26-27.

Finally, Grogg also submitted a copy of a report entitled "Locomotive Crash Worthiness and Cab Working Conditions" prepared in 1996 by the Office of Safety Assurance and Compliance, Federal Railroad Administration, U.S. Department of Transportation. Plaintiff's Response, Exhibit F. This report, argues Grogg, supports his contentions that defective locomotive design caused or at least contributed to his degenerative disc disease. This is because, as Grogg argues, the report notes that "the basic needs of locomotive crew seem to directly parallel those of commercial aircraft pilots and interstate truck drivers who must perform similar workplace tasks given comparable constraints. These needs are as follows: . . . supportive seats which absorb vibrations and reflect size considerations . . . ." Exhibit F, p. 8.

The cumulative effect of this evidence, according to Grogg, is to establish material issues of fact concerning the cause of his injuries and the extent to which CSX was negligent in not addressing allegedly known design problems or defects with its locomotives and/or locomotive seats. Grogg argues that this evidence precludes a grant of summary judgment in favor of CSX on his FELA claims.

CSX replies to Grogg's evidence by arguing that it is insufficient to avoid the entry of summary judgment. CSX maintains that Grogg has failed to present sufficient evidence as to the causation of his injuries. CSX states that "[c]ausation is addressed first in this Reply Brief because resolving the causation issues should result in dismissal of the entire case without reaching the other issues, or at the very least a significant streamlining of Plaintiff's case." Defendant's Reply, p. 1. CSX claims that "there is no medical evidence causally relating the alleged negligence [of CSX] to either of Plaintiff's medical conditions." *Id*., p. 2. CSX goes on

to argue as follows:

> It is "well settled that 'FELA plaintiffs still must demonstrate some causal connection between a defendant's negligence and their injuries.'" *Schmaltz v. Norfolk & Western Ry. Co.*, 896 F.Supp. 180, 182 (N.D. Ill. 1995) (citations omitted). "To succeed in his FELA claim, Plaintiff must prove two things by a preponderance of the evidence: 1. Defendant was negligent; 2. Defendant's negligence caused or contributed to Plaintiff's injuries." Seventh Circuit Pattern Jury Instructions, No. 9.01. "The negligence complained of must be the cause of the injury. The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer." *Atchison, T. & S. F. Ry. Co. v. Toops*, 281 U.S. 351, 354-355 (1930). "[A]lthough a plaintiff need not make a showing that the employer's negligence was the sole cause, there must be a sufficient showing (i.e., more than a possibility) that a causal relation existed." *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987).

*Id*.

The court agrees with CSX that the causation evidence in the record as it stands currently is tenuous. But that is far different from saying that it is nonexistent, which is the position argued by CSX. CSX properly points out that neither Dr. Sassmannshausen nor Dr. Shugart presents a differential diagnosis that Grogg's injuries were a direct result of his working conditions. Whether the evidence Grogg has presented is sufficient to persuade a jury is uncertain. However, that is not the issue before the court. The court is ruling herein on a motion for summary judgment and it is black letter law that when doing so a court shall draw all reasonable inferences in favor of the nonmovant and shall not weigh the sufficiency of the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (inferences shall be drawn in favor of nonmovant); *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007) (district court may not weigh the evidence or engage in fact-finding but should simply determine whether there is a genuine issue for trial).

Furthermore, the cases cited by CSX in that portion of its reply brief quoted above have little or no relevance to a motion for summary judgment. In the *Schmaltz* case, for example, the FELA plaintiff's case was dismissed on summary judgment because he produced *no* medical evidence whatsoever concerning the cause of his injuries. It had nothing to do with a case, like the present one, where the debate is about the adequacy and sufficiency of the plaintiff's medical evidence. In the *Atchison* case, the Court was discussing the level of proof required in a FELA case to sustain a jury verdict in favor of the plaintiff. The case had nothing to do with resolving a motion for summary judgment. In the present case, when Grogg's evidence in opposition to the motion for summary judgment is considered in its entirety, and especially in light of the featherweight standard of proof required for claims brought under the FELA, it is clear that Grogg has succeeded in raising material issues of fact on those claims. For all of these reasons, the motion for summary judgment is denied on plaintiff's claims under the FELA.

**2.  Motion for Summary Judgment Based on Statutory Preclusion.**

As stated previously, CSX also argues that it is entitled to summary judgment because Grogg's claims are precluded by certain superseding federal statutes, specifically the Locomotive Inspection Act ("LIA"), 49 U.S.C. §§ 20701-20703, and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.* Defendant's Memorandum, p. 4 and p. 7. CSX argues that the LIA bars Grogg's claims that defective locomotives and/or defective seats caused or exacerbated his degenerative disc disease. *Id.*, p. 4. CSX also argues that the FRSA bars Grogg's claim that walking on uneven ballast caused or exacerbated the osteoarthritis in his knee, as well as his claim that his injuries were the result of riding on defective railroad tracks. *Id.*, p. 7.

11

### A. Preclusion of Claims Under the LIA.

Recently, Judge Simon of this court issued an opinion and order in which he discussed

the LIA and its relationship to the FELA.  Judge Simon explained as follows:

> The LIA, formerly known as the Boiler Inspection Act ("BIA"), functions as a
> supplemental amendment to FELA, written for the purpose of facilitating
> employee recovery.  *See Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 93
> L.Ed. 1282 (1949).  It prohibits the use of a locomotive unless "the locomotive or
> tender and its parts and appurtenances (1) are in proper condition and safe to
> operate without unnecessary danger of personal injury; (2) have been inspected as
> required under this chapter and regulations prescribed by the Secretary of
> Transportation under this chapter; and (3) can withstand every test prescribed by
> the Secretary under this chapter."  49 U.S.C. § 20701.  The Federal Railroad
> Administration ("FRA") has issued regulations concerning locomotive safety
> standards and inspections.  *See* 49 C.F.R. §§ 200 *et seq.*
>
> A rail carrier's violation of LIA is negligence per se under FELA, and subjects a
> railroad to strict liability.  *Coffey v. Northeast Ill. Regional Commuter R. Corp.,*
> 479 F.3d 472, 477 (7th Cir. 2007); *McGinn v. Burlington Northern R.R. Co.,* 102
> F.3d 295, 298-99 (7th Cir. 1996).  A rail carrier may violate the LIA either by
> breaching the duty to keep all the locomotives parts and appurtenances in proper
> condition and safe to operate without unnecessary peril to life or limb, or by
> failing to comply with a regulation issued by the FRA.  *Id.*
>
> Beyond LIA violations, FELA also imposes a general duty upon railroads to
> provide a safe workplace.  *Id.* at 300.  FELA "is meant to offer broad remedial
> relief to railroad workers."  *Lisek v. Norfolk & Western Ry. Co.,* 30 F.3d 823, 832
> (7th Cir. 1994).  Put another way, "FELA allows recovery in a broad range of
> situations, while liability under the [L]IA only occurs under narrow
> circumstances."  *King v. Southern Pacific Transp. Co.,* 855 F.2d 1485, 1489 n. 1
> (10th Cir. 1988).  To establish general liability under FELA, a plaintiff must show
> circumstances which a reasonable person would foresee as creating a potential for
> harm and that the breach played any part, even the slightest, in producing the
> injury.  *McGinn,* 102 F.3d at 300.

*Becraft v. Norfolk Southern Ry. Co.,* 2009 WL 1605293 *2-3 (N.D. Ind., June 5, 2009).  Again,

in the case at bar, Grogg has brought negligence claims under the FELA as well as statutory,

strict liability claims under the LIA.  CSX argues that Grogg "cannot produce any evidence to

support his allegation that he used locomotives that violated the [LIA]."  Defendant's

12

Memorandum, p. 4.  CSX admits that "[t]here are two ways in which a railroad company can violate the LIA: (1) 'A rail carrier may breach the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life and limb . . . .' *Coffey v. Northeast Illinois Regional Commuter R.R. Corp.*, 2006 WL 951964, 3 (N.D. Ill., 2006); or (2) 'a rail carrier may fail to comply with the regulations issued by the Federal Railroad Administration.' *Id*."  Defendant's Memorandum, p. 4.  CSX argues that Grogg presents no evidence that he worked on or used any locomotive that allegedly had "parts and appurtenances" in such an unsafe condition they exposed him to "unnecessary peril to life and limb."  Instead, as CSX argues, Grogg "generally alleges that some of the locomotives and locomotive seats he utilized throughout his career were 'defective . . . .'" *Id*., pp. 4-5.  As to the second way in which a railroad company can violate the LIA, CSX states that "Plaintiff contends CSXT required [him] to use locomotives that were in violation of various federal regulations promulgated under the LIA, but, as set forth below, there is no evidence of any such violations." *Id*., p. 5.

CSX next lists each section of the Code of Federal Regulations related to the LIA that Grogg alleges the company violated and proceeds to argue that it is entitled to summary judgment in its favor on each of them.  *Id*., pp. 5-7.  It is not necessary to address each of these regulations, however, since Grogg concedes that he does not have sufficient evidence to support his allegations under certain of those sections.  In his response brief, Grogg states that he "concedes that he has been unable to establish adequate evidence to support his allegations that CSXT violated the following Code of Federal Regulations: 49 C.F.R. § 229.23; 49 C.F.R. § 229.63 and 49 C.F.R. § 229.9.  As such, plaintiff agrees that CSXT is entitled to partial summary

judgment as to these specific allegations **only**." Plaintiff's Response, p. 15 (emphasis in original). Accordingly, the court will grant summary judgment in favor of CSX on Grogg's claims under those specific sections of Title 49 of the C.F.R.[2] That still leaves Grogg's allegations of violations of two other sections of the C.F.R. as they apply to the LIA–specifically, 49 C.F.R. § 229.7 and 49 C.F.R. § 229.45. Section 229.7 states, in pertinent part, as follows:

> (a) The Locomotive Inspection Act . . . makes it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances–
>
> (1) Are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb; and
>
> (2) Have been inspected and tested as required by this part.

Section 229.45 states, in its entirety, as follows:

> All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. These conditions include: insecure attachment of components, including third rail shoes or beams, traction motors and motor gear cases, and fuel tanks; fuel, oil, water, steam, and other leaks and accumulations of oil on electrical equipment that create a personal injury hazard; improper functioning of components, including slack adjusters, pantograph operating cylinders, circuit breakers, contactors, relays, switches, and fuses; and cracks, breaks, excessive wear and other structural infirmities of components, including quill drives, axles, gears, pinions, pantograph shoes and horns, third rail beams, traction motor gear cases, and fuel tanks.

Grogg states in his response brief that CSX "does **not** challenge plaintiff's evidence specifically with regard [to] CSXT's alleged violations of 49 C.F.R. § 229.7 and 49 C.F.R. §

---

[2] Section 229.23 mandates that locomotives be inspected at specific intervals; section 229.63 sets very specific standards on the allowable "uncontrolled lateral motion between the hubs of the wheels and boxes, between boxes and pedestals or both, on any pair of wheels . . . ." Section 229.9 restricts the manner and speed at which locomotives may move if they have one or more conditions that are not in compliance with all the provisions of section 229.

229.45." Plaintiff's Response, p. 15.  Grogg contends that as a result of this failure to challenge

his evidence regarding these regulatory sections, CSX is not entitled to summary judgment as to

those allegations and, instead, is only entitled to summary judgment as to those regulatory

sections that he has conceded (as discussed above).  *Id.*  It is true that CSX does not specifically

mention these two sections in its memorandum, whereas it does specifically reference the other

sections that Grogg now concedes.  In its memorandum, CSX discusses sections 229.23, 229.63,

and 229.9, each under its own individual subheading.  Defendant's Memorandum, pp. 5-7.

However, it is a stretch to argue that CSX does not contest Grogg's allegations under sections

229.7 and 229.45.  While those sections may not be specifically delineated in the same manner

as the other C.F.R. sections, CSX does challenge Grogg's allegations that any of the CSX

locomotives were violative of § 229.7 or § 229.45.  Again, CSX maintains that "[t]here is no

evidence whatsoever that any locomotive used by plaintiff had parts and appurtenances that

placed Plaintiff in 'unnecessary peril to life or limb.'  Instead, Plaintiff simply speculates that

suspensions or shocks might have been worn on some of the locomotives, although he admits

that he has no knowledge of what causes some locomotives to ride differently than others.

(Grogg Dep. at 104, 119-121.)  Without these necessary facts, Plaintiff cannot support his

allegations as required by Rule 56."

      The court agrees with CSX that it has challenged all of Grogg's allegations of violations

of the LIA as set forth in Title 49 of the C.F.R.  But the court does not agree that Grogg has

failed to present any admissible evidence under Fed.R.Civ.P. 56 to support his allegations of

violations of sections 229.7 or 229.45.  The evidence Grogg presents is a recitation of his

personal experience while working in various locomotives, as expressed in his deposition

15

testimony, and the letter/report prepared by Tyler Kress.  The latter contains references to

locomotive design (including design of the seats) and excessive vibration, and concludes that

alleged faults in such design could result in biomechanical effects which in turn could result in

injuries such as those sustained by Grogg.  Kress's report supports Grogg's arguments that there

exist genuine issues of material fact in this case with regard to Grogg's negligence claims under

FELA as well as his allegations of violations of the LIA. CSX maintains that Grogg's evidence

consists of nothing more than his own speculation and that his claims are unsupported by any

evidence properly submitted under Rule 56.  But this argument paints with too broad a brush.

In his deposition, Grogg explained his allegations that defective locomotive design and

defective locomotive seating caused or contributed to his back injury.  Grogg testified, based on

his personal knowledge and experience, as follows:

> Q.  Now, what do you believe caused your back condition?
>
> A.  Well, being old, I guess.  A lot of it is the–I'd say the 5700s, the 5800s,
> the–the old head-banging engines, and the terrible seats in the–in the CSX engine
> pool.  We can get an engine off the BN, or the CN&W, and you just can't believe
> the difference in riding conditions.  In fact, the old Conrail ones are even worse
> yet, and they haven't bothered changing those.  Those, you might was well be
> sitting on a bucket.  But it's constant pounding and head-banging, and you just
> cannot get comfortable in them.  And after 12 hours of sitting on one of those
> things, you're almost ready to shoot yourself.

Plaintiff's Response, Exhibit A, Grogg Deposition, pp. 103-104.

> Q.  Are there certain series engines that you believe don't produce lateral motion?
>
> A.  Some of your newer engines.  The–the wide bodies, the–some of the new
> lightening bolts, which, the 600 series is a lightening bolt, or a wide-body newer
> engine.  But it's–it's one of the older ones, and their–their suspensions have
> broken down.  And there's times you don't even know if you're going to stay on
> the tracks.  You cannot have a cup of coffee sitting in front of you with one of
> those engines.  Now, don't get me wrong, they're one of the best engines we've
> got, as far as pulling, but one of the worst ones to ride on.

*Id.*, pp. 104-105.  Grogg continues in his deposition to provide a detailed description, based on

his personal experience, of the different types of engines used by CSX and compares the newer

engines and their design to the older ones he worked on for many years.  *Id.*, pp. 105-108.

Specifically, he explains how the newer engines provide much more comfort and "not as much

pounding."  *Id.*, p. 108.  Specifically addressing the seats in various locomotives, Grogg testified

as follows:

> Q.  Did the locomotive seats–were they different for each type of engine–series of
> engine, or were they–was it pretty much a–
>
> A.  Yeah, each–each engine has different–they had juggernauts, or something like
> that.  That they were having a lot of problems with breaking off.  And some of our
> older GP40 engines, they had just round seats with a back that sometimes you
> could adjust them up and down, and sometimes couldn't.  No shocking in it at all,
> just hanging off the side of the wall.  And then they come out with some of the
> newer engines that I was talking about, come up with higher seats for your neck,
> because there was so much problems with the neck, because those other engines
> didn't have a very high seat, and that left your neck hurting all the time . . . .

*Id.*, pp. 111-112.  Grogg also testified that he kept his own records while working as a conductor

and, in addition to noting such things as "departure time, arrival time, cars, tonnage, engines,

engine numbers . . ." he also made specific notations each time he rode on a locomotive with

what he considered bad seats and "that the seats need to be fixed."  *Id.*, p. 113.  He also made

notes wherein he wrote that in certain locomotives the "'[s]eats are terrible, seats are bad,' or

something, you know, so that I could remember what–what ones were bad."  *Id.*, pp. 113-114.

Grogg's detailed testimony about alleged design defects or other problems with various types of

locomotives continues for a large portion of his deposition.  *Id.*, pp. 114-124.

The detailed report prepared by Kress supports and supplements Grogg's testimony.

Plaintiff's Response, Exhibit B.  In that report, Kress explains that he personally "inspected

17

several locomotive seats similar to those that Mr. Grogg used while he was [a] conductor. I have also made and am familiar with the ergonomic and vibrational measurements of exposures similar to what Mr. Grogg was subjected to over the years." *Id.*, p. 2. Kress explains that he also reviewed a substantial amount of "scientific, engineering, and medical literature on the subject of whole body vibration." *Id.* As discussed earlier in this opinion and order, Kress concludes that continued "[w]hole body vibration exposure and cumulative wear-and-tear due to poorly designed seats can be injurious . . . ." *Id.* Kress also offers his opinion and expert analysis concerning alleged defects in locomotive seat design and locomotive "ride environment." *Id.*, pp. 2-5. He specially concludes that "Mr. Grogg's work at the railroad exposed him to risk factors that are definitely associated with and consistent with development of his injuries." *Id.*, p. 5. Kress states that "CSX failed to apply appropriate job design procedures, causing Mr. Grogg's work environment to be inadequate with respect to safety[.]" and that "CSX has not addressed locomotive cab design with respect to minimizing vibrational and biomechanical risk." *Id.*, pp. 5-6. Kress also offers his analysis and opinions regarding Grogg's allegations concerning having to walk for years on uneven ballast, and concludes that walking on uneven ballast is consistent with the type of injury Grogg sustained to his knee. *Id.*, pp. 6-8.

CSX discounts Grogg's testimony altogether, claiming it amounts to nothing more than his own speculation that certain working conditions caused his injuries and that Grogg "is relying upon mere allegations that cannot be proven." Defendant's Memorandum, p. 4. But whether Grogg's allegations can "be proven" is not the issue on summary judgment. Grogg is certainly free to testify about the working conditions he experienced during his decades as a railroad employee and what effects he believes those conditions had on his physical health. Such

18

testimony based on personal knowledge is completely admissible. Whether Grogg is able to produce sufficient supporting evidence at trial, including medical evidence, to corroborate his own testimony and support his allegations remains to be seen, but is not relevant now. CSX presents no evidence whatsoever to contest or contradict the evidence submitted by Grogg. It merely dismisses Grogg's own sworn testimony as "speculation" and lodges a rather informal objection to Kress's report–an objection from which it appears to back away in its reply brief when it states that Kress's report is "not relevant to any issue" on summary judgment anyway. CSX presents no contradictory testimony, affidavits, or expert reports, relying instead on purely legal arguments in support of its motion for summary judgment.

For these reasons, and for the reasons discussed above in addressing Grogg's FELA claims, the court finds that the evidence is sufficient to raise a genuine issue of material fact as to whether CSX violated 49 C.F.R. § 229.7 and/or 49 C.F.R. § 229.45 and summary judgment is denied on those claims under the LIA.

### B.  Preclusion of Claims Under the FRSA and the LIA.

"In 1970, Congress enacted FRSA to 'promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents.' 49 U.S.C. § 20101 (formerly 45 U.S.C. § 434); *see generally CSX Transp.,* 507 U.S. at 661-662, 113 S.Ct. 1732. To accomplish this purpose, FRSA confers authority upon the Secretary of Transportation to 'prescribe regulations and issue orders for every area of railroad safety.' 49 U.S.C. § 20103(a)." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 106 (2nd Cir. 2009). It is well established that provisions of the FRSA may preclude certain claims brought by railroad employees. *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773, 777 (7th Cir. 2000). It is also true that the LIA can have the same preclusive

impact on certain types of claims. *Becraft v. Norfolk Southern Ry. Co.,* 2009 WL 1605293 *3

(N.D. Ind., June 5, 2009). In the present case, CSX argues that the "FRSA precludes Plaintiff's

defective track and improper ballast size FELA claims, while the LIA precludes Plaintiff's

FELA claim regarding locomotive design and equipment." Defendant's Reply, p. 9.[3]

In the *Becraft* case quoted above, the plaintiff brought claims under both the LIA and the

FELA, just as Grogg has done in the present case. The court was faced with the defendant's

argument that the LIA precluded Becraft's FELA claims. Judge Simon began his analysis as

follows, by explaining the doctrine of preclusion in such cases:

> Becraft's complaint alleged claims under the Locomotive Inspection Act ("LIA"),
> 49 U.S.C. § 20701 *et seq. ;* Safety Appliance Act, 49 U.S.C. § 20301 *et seq. ;* the
> Code of Federal Regulations, 49 C.F.R. §§ 229.7, 229.45; and a negligence claim
> pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et
> seq.* He withdrew all but the FELA claim in his response to Norfolk's motion for
> summary judgment. Pl.'s Response [DE 25] at 7. So the only remaining issue is
> whether the LIA precludes Becraft's FELA claim. Although a federal statute can
> preempt conflicting state laws, one federal statute cannot technically "preempt"
> another federal statute. *Baker v. IBP, Inc.,* 357 F.3d 685, 688 (7th Cir. 2004).
> However, if the two federal statutes address the same subject matter, one may
> implicitly repeal the other, resulting in a "preclusion" analysis. *Randolph v.
> IMBS, Inc.,* 368 F.3d 726, 730 (7th Cir. 2004) (stating that for preclusion to occur
> there must be either an "irreconcilable conflict between the statutes or a clearly
> expressed legislative decision that one replace the other").

*Becraft,* 2009 WL 1605293 *1. In the *Becraft* case, the plaintiff's allegation was that the boots

his employer required him to wear while working caused him injury. The court concluded that

no provision of the LIA dealt with or even mentioned footwear. Accordingly, Becraft's claims

---

[3] The parties dedicate several pages of their respective briefs debating the difference
between "preemption" and "preclusion." This debate is superfluous. It is sufficient to note that
"preemption" under either the FRSA or the LIA applies to claims against railroads brought under
state law, while "preclusion" applies where one federal statute may preclude a plaintiff's claim
brought under another federal statute. The argument in the present case involves the theory of
federal preclusion rather than federal preemption.

were not precluded by the LIA since no provision of the LIA or its applicable C.F.R. regulations addressed the issue.

Courts have held that both the LIA and the FRSA may have preclusive effect on a plaintiff's FELA claims (especially the latter). This much is clear. But despite many cases in many districts and circuits throughout the country, the degree to which this preclusion applies to FELA claims remains a developing part of the law and there is clearly no bright line test for applying preclusion. Preclusion analysis must still be applied on a case by case, claim by claim basis.

The court will first address the issue of preclusion under the LIA. CSX argues that even if the court finds Grogg's evidence sufficient to support his claim of violations of §§ 229.7 and 229.45 (i.e., violations of the LIA), the LIA still precludes Grogg's FELA claims based on faulty locomotive design and faulty equipment. Defendant's Reply, pp. 13-19. CSX argues that the LIA "occupies the field of locomotive design and equipment" and therefore preclusion of FELA claims is absolute. *Id.*

CSX cites no case that holds that a plaintiff's FELA claim is precluded even where the court finds that the plaintiff has produced sufficient evidence to survive summary judgment on a claim that the defendant violated the LIA. If a court were to find that a plaintiff has not raised a genuine issue of fact as to alleged violations under the LIA, and also accepted a defendant railroad's legal argument that the LIA *specifically occupied the field* dealing with that plaintiff's FELA claim, preclusion would likely apply. But CSX presents no authority (nor was the court able to discovery any) for the proposition that when, as here, a plaintiff survives summary judgment on allegations of LIA violations his "companion" FELA claims are still precluded.

CSX's argument has an undeniable visceral appeal in light of the abundance of case law dealing with the preclusion issue under the FRSA. But while the language in §§ 229.7 and 229.45 certainly does not prevent CSX from raising the argument that the LIA was intended to "occupy" all aspects of locomotive safety and design and, consequently, preclude actions brought under the FELA, the cases throughout the nation do not support CSX's argument that the LIA has such sweeping preclusive effect. Turning again to this court's discussion of preclusion in *Becraft*, Judge Simon wrote as follows:

> I can safely assume that where the issue raised by a FELA claim is directly covered by a regulation issued pursuant to the LIA, then the claim is precluded. I make this assumption based on the similar conclusion made by the Seventh Circuit in *Waymire v. Norfolk and Western Ry. Co.,* 218 F.3d 773, 776-77 (7th Cir. 2000) with respect to FELA claims and the Federal Railroad Safety Act ("FRSA"). FRSA, like the LIA, is a strict liability statute regulating railroad safety. 49 U.S.C. § 20101 *et seq.* It authorizes the Secretary of Transportation to issue regulations and orders pertaining to railroad safety for the purpose of supplementing existing laws and regulations. 49 U.S.C. § 20103. The *Waymire* court took the well developed history of FRSA/state law preemption cases, and reasoned that the FELA claims should be similarly precluded if they are "inconsistent." *Id.* at 777. So, for example, in *Waymire,* the plaintiff was precluded from bringing a FELA claim alleging a train was traveling at an unsafe speed and that inadequate warning devices failed to prevent injury. *Id.* at 776-77. Since there already existed a series of regulations setting maximum speeds and providing for the installation of a certain type of warning device, the Seventh Circuit found that FRSA aptly "covered" the field, and therefore precluded the FELA claim. *Id.* at 776.
>
> Taking *Waymire's* lead, I must first determine whether Becraft's claim is covered by the LIA. The Supreme Court has said that the LIA "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier,* 272 U.S. at 611. But "the term 'parts and appurtenances' does not include every item of equipment that conceivably could be installed on a locomotive." *Mosco v. Baltimore & Ohio Railroad,* 817 F.2d 1088, 1091 (9th Cir. 1987). *See also, Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936) ("[M]ere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not [within the BIA]."). Instead, the term "parts and appurtenances" refers to "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or

22

attachments definitely prescribed by lawful order of the [Secretary of Transportation], are within the statute." *Id.* at 402.

Equipment and devices which fall outside of this definition, "have not been excluded from the usual rules relative to liability," *id.,* and in this case, the applicable liability rules are set forth by FELA. The language used to define the LIA means that the field occupied by the act is not, as Norfolk suggests, anything and everything that could possibly touch the train or anything and everything involving train safety. *See accord, Weaver v. Missouri Pacific R. Co.,* 152 F.3d 427, 430 (5ᵗʰ Cir. 1998) (finding the LIA did not preclude FELA claim that railroad should have installed screens to prevent employees from being hit by bottles thrown from outside); *Mosco,* 817 F.2d at 1092 (first dismissing a BIA claim based on railroad's failure to provide protective window screens and then finding that the same facts gave rise to a potential FELA claim); *Terrell v. Soo Line Railroad Co.,* 2005 WL 4882750 at * 3-7 (S.D. Ind. Sept.1, 2005) (finding the LIA did not preclude a FELA claim based on inadequate seat cushioning). These cases teach that the LIA applies only to aspects of the railroad that fit within the LIA's definition–the locomotive, its parts, and appurtenances–and no more.

. . .

*Terrell* represents of recent example within this circuit of a court recognizing the limitations of the LIA's preclusive effect against potential FELA claims. In *Terrell,* the plaintiff claimed his injuries stemmed from locomotive seats that were unsafe because of inadequate air cushioning. *Terrell,* 2005 WL 4882750 at * 2. Judge Tinder found the employee's FELA claim was not superceded by the LIA, despite the fact that the defendant had complied with regulations regarding the secure mounting and bracing of cab seats. *Id.* at * 4 (citing 49 C.F.R. § 229.119(a)). Judge Tinder noted that "even if Defendant did not violate the LIA or its regulations, this does not preclude a finding of liability under the FELA." *Id.* at * 4. Interpreting *Waymire* and other preemption cases to allow FELA claims so long as they are not inconsistent with existing FRA regulations, he found the LIA did not address seat cushioning and that the FELA claim could therefore move forward. *Id.* at * 5-6.

. . .

Norfolk offers no instances of a court dismissing a FELA claim because of LIA preclusion, and I can find only examples to the contrary. *See Terrell,* 2005 WL 4882750 at * 5-6; *Mosco,* 817 F.2d at 1092; *Weaver,* 152 F.3d at 430. . . . In this sense, the LIA serves its originally intended function as a "supplement" to FELA, not a replacement. *See Urie v. Thompson,* 337 U.S. at 188 ("[I]t has been held consistently that the Boiler Inspection Act supplements the Federal Employers'

> Liability Act by imposing on interstate railroads 'an absolute and continuing
> duty' to provide safe equipment."); *King,* 855 F.2d at 1489 n. 1.

*Becraft*, 2009 WL 1605293 * 3-6.

Judge Simon's detailed and reasoned analysis contains several points that apply to the present case. First, he points out, as this court is doing, that claim preclusion under the LIA (and the FRSA for that matter) is not absolute, simply because language in the LIA or one of its accompanying federal regulations could be argued to "occupy the field" in a broad sense. Second, as the *Mosco* case makes clear, even where a provision in the LIA could be argued to apply to locomotive design and/or safety, "the term 'parts and appurtenances' does not include every item of equipment that conceivably could be installed on a locomotive." *Mosco,* 817 F.2d at 1091. It was this reasoning that the Ninth Circuit used to hold that the LIA did not preclude the plaintiff's FELA claim based on the railroad's failure to install proper screens on its locomotives. Third, there is a dearth of case law wherein courts have dismissed FELA claims based on LIA preclusion. Fourth, and certainly importantly, is the mention of the case of *Terrell v. Soo Line Railroad Co.,* 2005 WL 4882750 at * 3-7 (S.D. Ind. Sept.1, 2005), wherein the court held that the LIA did not preclude a FELA claim based on inadequate seat cushioning. That case is remarkably similar to the case at bar and, obviously, is the opinion of a court within the Seventh Circuit.[4] For the same reasons expressed in *Becraft* and *Terrell*, this court refuses to

---

[4] CSX does cite a few cases from other circuits in which it claims courts have "rejected the notion that an FELA plaintiff may circumvent the LIA by attempting to impose a duty upon the railroads to install different or additional equipment on locomotives." Defendant's Memorandum, p. 19. This court does not find these cases to be precisely on point as to the issue of LIA preclusion and also notes, as Judge Simon did in his opinion, that there are many cases–including cases in courts within this Circuit–that hold otherwise, such as *Terrell*. Therefore, the court does not find the cases cited by CSX authoritative or, in most cases, even instructive.

extend the preclusion doctrine as expressed in *Waymire* to the present case as CSX urges it to do. For all of these reasons, the court concludes that the LIA does not preclude Grogg's claims under the FELA and CSX's motion for summary judgment on that issue is denied.

Finally, CSX argues that the FRSA, as opposed to the LIA, precludes Grogg's "defective track" claim and his "defective ballast" claim. Defendant's Memorandum, p. 7. The lengthy discussion above concerning the preclusion doctrine need not be repeated at this point. In any event, this court agrees with CSX's position regarding Grogg's claim that a failure by CSX to properly maintain portions of its track contributed to his alleged injuries. Conversely, the court concludes that the FRSA does not preclude Grogg's FELA claim concerning the improper use of ballast.

As to the defective track claim, Grogg presents no evidence whatsoever that CSX was negligent in maintaining any portion of track on which he worked. In support of his argument on this point, Grogg submits only his own deposition testimony in which he stated that portions of the track he was required to travel subjected him to "adverse track conditions." *See* Defendant's Reply, pp. 10-11. In fact, in his response brief, Grogg addresses this allegation as follows: [W]ith regard to the conditions of track, plaintiff testified that he would call dispatch to report a bad section of track. Plaintiff specifically recalled the track at West Bremen number one (1) track going eastbound was very rough. (Ex. A, p. 122.) There is some evidence in the record concerning bad sections of track upon which plaintiff operated locomotive engines which adversely affected the ride quality sufficient to defeat defendant's motion on this issue as well. (See Ex. B.)." Plaintiff's Response, p. 17. Exhibit A is, of course, Grogg's own deposition, wherein he does make a brief and cursory reference to "rough track" and having reported it to his

25

supervisors on a specific occasion. Exhibit B is Tyler Kress's report, which references certain track conditions, but only in the context of the broader discussion of the biomechanical effects of vibration and improper seating. Kress does not identify a specific stretch of track that he claims to have personally inspected and found to be defective, or which he alleges could have caused or contributed to Grogg's injuries. This "evidence" is, as CSX argues, really no evidence at all. CSX is correct on this claim–it is based solely and completely on a bare, unsupported allegation. Perhaps that is why Grogg devotes only a few lines to the claim in his brief. In any event, summary judgment is granted to CSX on Grogg's claim that the company was negligent in maintaining the track over which Grogg rode.[5]

As to Grogg's claim that he was forced to work on uneven ballast and that this caused or contributed to the arthritis in his knee, the court stands by its reasoning and conclusion in the case of *Wilcox v. CSX Transportation, Inc.*, 2007 WL 1576708 (N.D.Ind. May 30, 2007). In *Wilcox*, the plaintiff presented a virtually identical FELA claim, alleging that having to walk for many years on uneven ballast caused him personal injury. CSX filed a motion for summary judgment arguing that such a claim was precluded by the FRSA. This court denied that motion and concluded, for the reasons discussed in that opinion and order, that the claim was not precluded. In the present case, CSX points out that at least one circuit court has since held otherwise, ruling that such a claim is in fact precluded. Defendant's Memorandum, p. 13;

---

[5] Since the court concludes that Grogg presents no evidence to support his "defective track" claim or even raise a fact issue about it, it is not necessary to address CSX's argument that the FRSA precludes such a claim. However, the court notes that, unlike Grogg's claims of defective or improperly maintained locomotives, this claim would, in all likelihood, fall within the parameters of FRSA preclusion. CSX's arguments that track construction and maintenance are covered by the FRSA and accompanying federal regulations is well taken and supported by an abundance of case law.

Defendant's Reply, p. 12. CSX is correct that the Sixth Circuit, in *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009), held just that. If the present case were in the Sixth Circuit, that case would likely carry the day for CSX. But the state of the law on this issue in the Seventh Circuit remains as it was when this court issued its opinion and order in *Wilcox*.[6] The decision in *Wilcox* was in turn based on the well-reasoned prior opinion by Judge Sharp of this court in the case of *Grimes v. Norfolk Southern Railway Company,* 116 F.Supp.2d 995 (N.D. Ind. 2000), which also addressed this precise issue. This court's reasoning, as well as a lengthy verbatim excerpt from *Grimes*, are set forth in this court's opinion at 2007 WL 1576708 at pages 3-8 and need not be repeated herein since it is published on Westlaw, and especially given that CSX was the defendant in that case. It is sufficient to point out that in *Wilcox*, CSX made the same argument on this issue that it makes now. The court, acknowledging conflicting case law, held as follows:

> While CSX is obviously correct in stating that [other court's holdings] are at odds with this court's holdings in *DeGrasse* and *Grimes* (as well as other federal court decisions as discussed by Judge Sharp in *Grimes*), the court is not persuaded by CSX's argument that it should now reverse course on this issue. Once again, the plain language of § 213.103 does not state, expressly or by implication, that the regulation was intended to provide for the safety of railroad employees, or that it was promulgated by the FRA with a clear "intent to occupy the field of safety regulation of ballast completely[,]" as CSX contends. The current "split of authority" on this issue is one that properly should be resolved by Congress and/or the FRA, by amending the language of § 213.103 to clarify its scope and intent.[7]

---

[6] While this court certainly respects the Sixth Circuit's decision in *Nickels*, the fact that another federal court has held differently on this issue since this court issued its opinion in *Wilcox* only serves to demonstrate the unsettled, complex, and even confusing state of the law with regard to preclusion issues in FELA cases.

[7] Section 213.103 of the C.F.R. is the regulation that pertains to the use of ballast by railroads to support their tracks and provide proper drainage.

For the same reasons expressed in *Wilcox*, the court concludes in this case that Grogg's FELA claim based on his allegations of personal injury sustained as a result of working on uneven ballast is not precluded by the FRSA and CSX's motion for summary judgment on this claim is denied.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by the defendant CSX Transportation, Inc., is GRANTED in part and DENIED in part as follows: the motion is GRANTED as to plaintiff's claims of violations of the LIA concerning 49 C.F.R. §§ 229.23, 229.63 and 229.9; the motion is DENIED as to plaintiff's claims of violations of the LIA concerning 49 C.F.R. §§ 229.7 and 229.45; the motion is DENIED as to plaintiff's FELA claims for personal injuries allegedly sustained as a result of allegedly defective locomotives and/or defective locomotive equipment; the motion is DENIED as to plaintiff's claim for personal injury allegedly sustained as a result of uneven or otherwise improper ballast; and the motion is GRANTED as to plaintiff's claims for personal injuries as a result of defective railroad tracks.

Entered: September 14, 2009.

   /s/   William C. Lee
          William C. Lee, Judge
          United States District Court
          Northern District of Indiana